793 F.2d 1018
 55 USLW 2047, 14 Soc.Sec.Rep.Ser. 97,
Medicare&Medicaid Gu 35,478
 Marjorie VANCE, on her own behalf and as Next Friend of
Linda Barteau, her minor child, and Susan Turner, on her own
behalf and as Next Friend of Shane Turner, her minor child,
and All Others Similarly Situated; Appellees,
v.
Leo HEGSTROM, Individually and in his Official Capacity as
Director of the Department of Human Resources of the State
of Oregon; and Keith Putman, Individually and in his
Official Capacity as Director of the Adult and Family
Services Division of Department of Human Resources of the
State of Oregon; and Otis R. Bowen,*
Individually and in his Official Capacity as Secretary of
the Department of Health and Human Services of the United
States of America; Appellants.
 Nos. 85-4050, 85-4065.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1986.
Decided July 1, 1986.
As corrected July 2, 1986.
 
 Roger A. Schwartz, National Health Law Review, Washington, D.C., for appellees.
 Philip Schradle, Salem, Or., for Hegstrom.
 William J. McIntyre, Seattle, Wash., for Heckler.
 Appeal from the United States District Court for the District of Oregon.
 Before ALARCON, REINHARDT and THOMPSON, Circuit Judges.
 THOMPSON, Circuit Judge:
 
 
 1
 State appellants Hegstrom and Putnam (No. 85-4050) and federal appellant Secretary of Health and Human Services Bowen (No. 85-4065) appeal the district court's order granting summary judgment in favor of appellees. 629 F.Supp. 747. The sole issue on appeal is whether sibling income, which a state must include in computing income available to a family to determine AFDC eligibility under 42 U.S.C. Sec. 602(a)(38), may be included in computing that family's available income to deny Medicaid benefits. We hold that it cannot and we affirm the judgment of the trial court.
 
 
 2
 * FACTS
 
 
 3
 This case involves an interpretation of Title XIX of the Social Security Act, as amended, 42 U.S.C. Sec. 1396 et seq. (Medicaid) and its relation to Title IV-A of the Social Security Act, as amended, 42 U.S.C. Sec. 601 et seq. Title IV-A is more commonly known as Aid to Families with Dependent Children (AFDC). Both programs are cooperative federal-state efforts that enable states to provide assistance to needy families and individuals. See Lynch v. Rank, 747 F.2d 528, 530 (9th Cir.1984), modified and granting reh'g, 763 F.2d 1098 (9th Cir.1985); 42 U.S.C. Secs. 601, 1396. Although states are not required to participate in the AFDC or Medicaid programs, participating states must have their programs approved by the Secretary of Health and Human Services. Cubanski v. Heckler, 781 F.2d 1421, 1423 (9th Cir.1986); 42 U.S.C. Secs. 602(b), 1396a(a). Oregon has elected to participate in both programs.
 
 1. Medicaid
 
 4
 States electing to provide Medicaid benefits must cover "categorically needy" individuals. Cubanski, 781 F.2d at 1423; Lynch, 747 F.2d at 530 n. 1; 42 U.S.C. Sec. 1396a(a)(10)(A); 42 C.F.R. Sec. 435.100. "Categorically needy" individuals are those persons receiving AFDC or those "who would be eligible for AFDC except for an eligibility requirement used in that program that is specifically prohibited under [Medicaid]." 42 U.S.C. Sec. 1396a(a)(10)(A)(i)(I); 42 C.F.R. Secs. 435.4, 435.100 et seq.
 
 
 5
 Standards for determining Medicaid eligibility are set forth in 42 U.S.C. Sec. 1396a(a)(17). Schweiker v. Hogan, 457 U.S. 569, 574, 102 S.Ct. 2597, 2601, 73 L.Ed.2d 227 (1982). That section provides, in part, that a state's Medicaid plan must:
 
 
 6
 [I]nclude reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...
 
 
 7
 (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ...
 
 
 8
 (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or ..., is blind or permanently and totally disabled, ...
 
 
 9
 42 U.S.C. Sec. 1396a(a)(17).
 
 
 10
 Subsection (17)(B) grants the Secretary broad powers to set standards to determine what income is available to a Medicaid recipient. Herweg v. Ray, 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); Schweiker v. Gray Panthers, 453 U.S. 34, 43-44, 101 S.Ct. 2633, 2639-40, 69 L.Ed.2d 460 (1981). However, subsection (17)(D) precludes a state from "deeming,"[1] as income available to a Medicaid applicant, income from persons other than the applicant's spouse, or parent if the applicant is under twenty-one, blind, or disabled. 42 U.S.C. Sec. 1396a(a)(17)(D). Herweg, 455 U.S. at 275 & n. 13, 102 S.Ct. at 1067 n. 13.
 
 2. AFDC
 
 11
 Aid to Families with Dependent Children was enacted to "encourag[e] the care of dependent children in their own homes or in the homes of relatives...." 42 U.S.C. Sec. 601. Medberry v. Hegstrom, 786 F.2d 1389, 1389-90 (9th Cir.1986). The goal of the program is "to help maintain and strengthen family life and to help [parents or relatives of dependent children] to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, ..." 42 U.S.C. Sec. 601. To achieve this goal, federal funds are made available to the states to "enabl[e] each State to furnish financial assistance and rehabilitation and other services, ..." Id.
 
 
 12
 The Secretary's regulations require that states provide Medicaid to individuals receiving AFDC. 42 C.F.R. Sec. 435.110(a). For purposes of section 435.110, "an individual is receiving AFDC if his needs are included in determining the amount of the AFDC payment" to be received by a family with dependent children. 42 C.F.R. Sec. 435.110(b). To qualify for AFDC benefits, individuals must meet certain standards of financial need, as defined by their income and resources. 42 U.S.C. Sec. 602(a).
 
 
 13
 Applicants for AFDC are called family filing units. Prior to 1984, a family applying for AFDC benefits could exclude from the filing unit those family members whose income and/or resources, if counted in the overall family income and resources, would make the family ineligible for AFDC benefits. For example, prior to 1984, if one child in a family received $300 per month in social security benefits, that child and his income could have been excluded from the family filing unit, thus enabling the remainder of the family to qualify for and receive AFDC benefits.
 
 
 14
 This procedure changed in 1984 when Congress passed the Deficit Reduction Act of 1984, P.Law No. 98-369, 98 Stat. 1145 (DEFRA). Section 2640(a) of the Act, codified at 42 U.S.C. Sec. 602(a)(38), no longer allows an applicant for AFDC to exclude children from the filing unit. Specifically, in determining the eligibility of a dependent child for AFDC benefits a state must include:
 
 
 15
 (A) any parent of such child, and
 
 
 16
 (B) any brother or sister of such child, ... if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family ...;
 
 
 17
 42 U.S.C. Sec. 602(a)(38).
 
 
 18
 Thus, siblings who were previously excluded from the family filing unit are now members of the unit and their income is considered available to all members of the filing unit.
 
 
 19
 Appellees Marjorie Vance and Susan Turner are two mothers who, with their children, received AFDC and Medicaid benefits prior to 1984.[2] Each had one child who was excluded from the AFDC and Medicaid filing units prior to 1984 because they received social security benefits. Following the enactment of DEFRA, those children were made members of the family filing unit. The social security benefits received by those children made their families ineligible for AFDC benefits and consequently those benefits were terminated by Oregon. In addition to the termination of these AFDC benefits, which is not at issue in this case, Oregon also terminated appellees' Medicaid benefits. It was Oregon's position that because Medicaid eligibility of families and children not receiving AFDC is determined by the financial eligibility requirements of the states' AFDC plan, 42 C.F.R. Sec. 435.711, when a family became ineligible for AFDC because of the sibling income provisions of DEFRA,[3] the family was also ineligible for Medicaid.
 
 
 20
 In response to an inquiry from the state, the Health Care Financing Administration (HCFA) of the Department of Health and Human Services informed Oregon that this position fully complied with the Medicaid statutes and regulations. HCFA administers the Medicaid program at the federal level and is responsible for assuring that states operate their programs in accordance with their approved plans and in compliance with all applicable requirements. HCFA also assured Oregon that its position did not conflict with 42 C.F.R. Sec. 435.602(a)[4] because each sibling was now a member of the filing unit receiving assistance and thus the state was not deeming income. HCFA further informed Oregon that it could lose matching federal Medicaid funds if it provided Medicaid to a family ineligible for AFDC because of the sibling income provisions of DEFRA.
 
 
 21
 When Oregon terminated the appellees' Medicaid benefits appellees filed the present action. They claimed that the termination of their Medicaid benefits violated Medicaid statutes prohibiting deeming of sibling income. The district court granted appellees' motion for summary judgment and enjoined Oregon "from enforcing any rule or policy that includes as income for purposes of determining Medicaid eligibility, income of an individual, other than applicants or recipients, who is not the parent of a child that is under twenty-one, blind or disabled, or a spouse." The district court expressly adopted the reasoning of Olson v. Reagen, No. 85-101-A (S.D.Iowa Apr. 11, 1985) and Gibson v. Puett, No. 83-84-1232 (M.D.Tenn. Dec. 5, 1984) both of which held that subsection (17)(D) and the Secretary's regulations precluded inclusion of sibling income for purposes of determining Medicaid eligibility.[5]
 
 II
 DISCUSSION
 A. Standard of Review
 
 22
 We review the district court's order granting summary judgment de novo. Regents of the University of California v. Heckler, 771 F.2d 1182, 1187 (9th Cir.1985). Construction of the statute by the district court is also subject to de novo review. Lynch, 747 F.2d at 531.
 
 1. The Directive
 
 23
 Appellee's Medicaid benefits were terminated because of a directive issued to the states by the Secretary. The parties disagree as to the amount of deference we are to accord the directive because it was not a regulation promulgated under the Administrative Procedure Act (APA, 5 U.S.C. Sec. 551, et seq.)
 
 
 24
 The directive is a rule within the meaning of 5 U.S.C. Sec. 551(4). K. Davis, Administrative Law Treatise Sec. 7:7 at 171 (Supp.1982) ("agency's statement that asserts or changes the agency's law by affecting rights or obligations is a rule"). An agency's rule that is legislative will be given the force and effect of law by a reviewing court. Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); Cubanski v. Heckler, 781 F.2d at 1425-26 (1986). An interpretive rule is accorded various degrees of deference, "based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." Batterton, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. But see Whaley v. Schweiker, 663 F.2d 871, 873 (9th Cir.1981) (no deference due Secretary's interpretation of another agency's rule and regulations; dictum). "[W]hether a given rule is legislative or interpretive turns on whether it is one 'issued by an agency pursuant to statutory authority and ... implement[s] the statute,' [citation omitted] or one 'issued pursuant to an agency's interpretation of a governing statute without delegated power.' " Cubanski, 781 F.2d at 1427 (quoting Batterton, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9 and Fmali Herb, Inc. v. Heckler, 715 F.2d 1385, 1387 (9th Cir.1983)).
 
 
 25
 Substantive rules create law. They "usually implement existing law, imposing general, extrastatutory obligations pursuant to authority properly delegated by Congress." Southern California Edison Co. v. Federal Energy Regulatory Commission, 770 F.2d 779, 783 (9th Cir.1985). They effect a change in existing law or policy and affect individual rights and obligations. Chrysler Corp. v. Brown, 441 U.S. 281, 302-03, 99 S.Ct. 1705, 1717-1860 L.Ed.2d 208 (1979); Cubanski, 781 F.2d at 1426.
 
 
 26
 Interpretive rules clarify and explain existing law or regulations. Southern California Edison Co., 770 F.2d at 783. They are issued without delegated legislative power and "go more 'to what the administrative officer thinks the statute or regulation means.' " Cubanski, 781 F.2d at 1426 (quoting Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C.Cir.1952)); accord Southern California Edison Co., 770 F.2d at 783.
 
 
 27
 We recognize that not all agency pronouncements "can be considered regulations enforceable in federal court." Cubanski, 781 F.2d at 1425. However, we view the directive here as a substantive rule with "force and effect of law." Id. The directive was issued pursuant to Congress's broad delegation of authority to the Secretary to determine the amount of income available to a Medicaid applicant. 42 U.S.C. Sec. 1396a(a)(17)(B); Herweg, 455 U.S. at 270, 274-75, 102 S.Ct. at 1066-67; Gray Panthers, 453 U.S. at 34, 101 S.Ct. at 2633. It required the states to change the method used for determining income available to a Medicaid applicant and thus affected individuals' eligibility for those benefits. Medicaid is a benefit program, and thus is exempt from the procedural requirements of the APA. 5 U.S.C. Sec. 553(a)(2), (b)(A). Cubanski, 781 F.2d at 1428. Although the Secretary voluntarily waived the APA "benefits exemption" in 1971, thereby imposing upon the agency procedural requirements not required by law, 36 Fed.Reg. 2532 (1971), the "waiver [did] not overrule or otherwise abrogate Section 553(a)(2)...." Cubanski, 781 F.2d at 1428. Therefore, the fact the directive was not promulgated in accordance with the APA does not preclude us from concluding it is a substantive rule entitled to the force and effect of law. Id.[6]
 
 
 28
 Our conclusion that the Secretary's directive is a substantive rule entitled to the force and effect of law limits our review to "determining whether the Secretary has exceeded his statutory authority or whether the regulation is arbitrary and capricious." Herweg, 455 U.S. at 275, 102 S.Ct. at 1066.
 
 2. Statutory Construction
 
 29
 In cases involving statutory construction, we begin with the language employed by Congress. American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); Lynch, 747 F.2d at 531. The plain meaning of the words chosen by Congress is controlling in the absence of a clearly expressed legislative intent. Powell v. Tucson Air Museum Foundation of Pima, 771 F.2d 1309, 1311 (9th Cir.1985). Where an agency's interpretation of a statute addresses an issue about which the legislative history is silent or ambiguous, we must determine whether the agency's interpretation is based upon a permissible construction of the statute. California Hospital Ass'n. v. Henning, 770 F.2d 856, 859 (9th Cir.1985), reh'g denied and amended, 783 F.2d 946 (9th Cir.1986) (en banc). However, because "courts are the final authorities on issues of statutory construction [, we] must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate...." Cubanski, 781 F.2d at 1424 (quoting FEC v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)).
 
 B. Merits
 
 30
 Appellants contend the Secretary's definition of a Medicaid filing unit, which includes siblings and their income, is a proper exercise of his authority under subsection (17)(B). They argue that the Secretary has not "deemed" income to a filing unit in violation of subsection (17)(D) and the relevant regulations. Rather, he has exercised his authority under subsection (17)(B) to determine what income is available to a filing unit by defining the filing unit, which under DEFRA and 42 C.F.R. Sec. 435.711 must include siblings. The Secretary distinguishes his definition of a filing unit from deeming of income by arguing that deeming cases involve attribution of income to the Medicaid applicant in the filing unit from someone outside the unit, whereas here it is the income of individuals within the filing unit that is being included in the total income of the family unit. Thus, according to the Secretary, subsection (17)(D) would be relevant only after the filing unit was defined; it would not be relevant to the definition of the filing unit.
 
 
 31
 Although the Secretary has been granted broad authority under subsection (17)(B) to prescribe standards setting eligibility requirements for state Medicaid plans, Herweg, 455 U.S. at 274, 102 S.Ct. at 1066, the Secretary's statutory authority is not unlimited. Batterton, 432 U.S. at 428, 97 S.Ct. at 2407. In prescribing standards setting eligibility requirements, the Secretary may not read subsection (17)(B) independently of subsection (17)(D). Herweg, 455 U.S. at 274, 102 S.Ct. at 1066. Both subsections place a limit on the extent to which an applicant's income may be deemed to include contributions from other sources. Id. at 279, 102 S.Ct. 1068 (Stevens J., concurring). In structuring a Medicaid filing unit by defining it in such a way as to include sibling income, the Secretary is doing through subsection (17)(B) that which he is expressly precluded from doing by subsection (17)(D). Cf. id. at 275, 102 S.Ct. at 1066 (nothing in subsection (17)(D) precluded Secretary from defining the term "available" in subsection (17)(B) so as to place a time limit on states' ability to consider spouse's income where the applicant and spouse no longer live together).
 
 
 32
 The Secretary relies heavily on the legislative history of subsection (17)(D) and DEFRA to support his interpretation of subsection (17)(B). However, "where the language of a statute is unambiguous, it is conclusive as to its meaning '[a]bsent a clearly expressed legislative intention to the contrary.' " Lynch, 747 F.2d at 532. Here, the plain language of subsection (17)(D) explicitly prohibits the deeming of income from persons other than a Medicaid applicant's spouse, or a parent in the case of a child who is under twenty-one, blind or permanently and totally disabled. There is no clearly expressed legislative intent to the contrary.
 
 
 33
 The Secretary attempts to avoid the plain language of subsection (17)(D) by arguing that Congress clearly expressed an intent that the subsection apply only to relatives outside the nuclear family household and that it fully intended for the nuclear family to remain responsible for a Medicaid applicant. However, the legislative history relied on by the Secretary does not support such a conclusion. The term "nuclear family" does not appear in the legislative history. The legislative history refers only to a spouse, or the parent of a minor child, or the parent of children over twenty-one who are blind or permanently and totally disabled. See, e.g., S.Rep. No. 404, 89th Cong., 1st Sess. 78, reprinted in 1965 U.S.Code Cong. & Ad.News 1943, 2018; H.Rep. No. 213, 89th Cong. 1st Sess. 1, 68 (1965). Moreover, the Secretary's own regulations do not include the term "nuclear family." Title 42 C.F.R. Sec. 435.602, entitled "Limitation on the financial responsibility of relatives," refers only to the spouse of an individual or a parent of a child who is under twenty-one or blind or disabled.
 
 
 34
 The Secretary also contends that his definition of a Medicaid filing unit is consistent with Congress's reason for passing DEFRA, which was to reduce spending in light of a huge federal deficit. See, e.g., 130 Cong.Rec. S4097-98 (daily ed. Apr. 9, 1984) (statement of Senator Dole). The Secretary relies on statements made by members of Congress, and statements made in Congressional staff reports, that changes in the AFDC filing unit would result in decreases in the number of children receiving Medicaid, thus suggesting Congress recognized a change in the AFDC filing unit would also affect Medicaid eligibility. See e.g., id. at S.4099 (statement of Senator Dole); Senate Committee on Finance, 98th Cong., 2d Sess., Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, at 980, 1006-110 (Comm. Print 1984); Staff of Senate Committee on Finance, 98th Cong., 2d Sess., Data and Materials for the Fiscal Year 1985 Finance Committee Report Under the Congressional Budget Act 61 (Comm.Print 1984); Staff of Senate Committee on Finance, 98th Cong. 1st Sess., Data and Materials for the Fiscal Year 1984 Finance Committee Report Under the Congressional Budget Act 76 (Comm.Print 1983); Staff of House Committee on Ways and Means, 97th Cong., 2d Sess., Description of the Administration's Legislative Recommendations under the Jurisdiction of the Committee on Ways and Means 33 (Comm.Print 1982). It does not follow, however, that Congress intended to deny persons such as appellees Medicaid benefits when it enacted the AFDC amendments. The only express statements referring to the impact of the AFDC amendments on Medicaid are contained in reports prepared by staff personnel of members of Congress. These reports merely reflect the administration's view that changes in AFDC would also affect Medicaid eligibility. They are not statements of what Congress intended when it passed DEFRA. The statute finally enacted by Congress which required states to include sibling income when determining AFDC eligibility is directed solely to the provisions of 42 U.S.C. Sec. 602, which is a component of the AFDC statute, and not to subsection (17)(D). We must assume that Congress was aware of subsection (17)(D) when it enacted the AFDC amendments, could have amended subsection (17)(D), and chose not to do so. See Cannon v. University of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 1957-58, 60 L.Ed.2d 560 (1979).
 
 
 35
 The Secretary's own regulations are also significant and he may not disregard them when interpreting section 602 and subsections (17)(B) and (D). Flores v. Bowen, 790 F.2d 740, 742 (1986); Cubanski, 781 F.2d at 1425. The Secretary's distinction between defining a Medicaid filing unit under subsection (17)(B) and deeming income under subsection (17)(D) ignores his own regulation 42 C.F.R. Sec. 435.113. Under this regulation, a Medicaid applicant is "categorically needy" and must be given Medicaid benefits if "eligible for AFDC except for an eligibility requirement used in [the AFDC] program that is specifically prohibited under [Medicaid]." 42 C.F.R. Sec. 435.113. This regulation has not been repealed and thus it is binding on the Secretary. Flores, slip op. at 742. Appellees were eligible for AFDC prior to the 1984 DEFRA amendments. They are now alledgedly ineligible for Medicaid because AFDC requires the state to include sibling income in determining a family's eligibility for AFDC. This eligibility requirement for AFDC purposes is specifically prohibited by subsection (17)(D) of the Medicaid program. Therefore, according to the Secretary's own regulation (42 C.F.R. Sec. 435.113), appellees fall within the definition of "categorically needy" and are entitled to Medicaid benefits regardless of whether a sibling's income is included for purposes of defining a "filing unit" or for purposes of "deeming" income. See Olson, slip op. at 10 (difference in defining who must be included in a filing unit and who is financially responsible is not relevant).
 
 
 36
 Finally, we note that the Secretary's current position appears to be directly opposite to that taken in an analogous situation in early 1984. At that time, a recent amendment to AFDC allowed the deeming of stepparent income in determining AFDC eligibility. See 42 U.S.C. Sec. 602(a)(31). However, the Secretary concluded that states were prohibited by 42 C.F.R. Sec. 435.113 from considering the stepparent's income for purposes of determining Medicaid eligibility. See Malloy, 628 F.Supp. at 596 (discussing Secretary's 1984 statement regarding stepparent income and Medicaid benefits).
 
 
 37
 The Secretary's 1984 position is consistent with Massachusetts Ass'n. of Older Americans v. Sharp, 700 F.2d 749 (1st Cir.1983). There the First Circuit reversed the district court's denial of plaintiffs' motion for a preliminary injunction. Plaintiffs' Medicaid benefits, which they had been receiving by reason of AFDC eligibility, were terminated by Massachusetts when they became ineligible for AFDC due to a change in federal law which required the deeming of stepparent income for AFDC eligibility purposes. The court determined that the plaintiffs were "clearly" likely to prevail on the merits of their case and would be successful in getting their Medicaid benefits restored. Id. at 752. The court stated that the plaintiffs remained "categorically needy" under 42 C.F.R. Sec. 435.113, and the reason for their disqualification for Medicaid (stepparent income deeming) was expressly made irrelevant to Medicaid eligibility under 42 U.S.C. Sec. 1396a(a)(17)(D). Sharp, 700 F.2d at 753. The Secretary argues that while Sharp was properly decided, it should not be applied here. His argument asks us to make a distinction between deeming stepparent income under 42 U.S.C. Sec. 602(a)(31), determined to be irrelevant to Medicaid eligibility in Sharp, and defining a family unit to include a sibling and his or her income under 42 U.S.C. Sec. 602(a)(38) so as to disqualify appellees from Medicaid eligibility here. We decline to make that distinction.
 
 III
 CONCLUSION
 
 38
 We conclude that 42 U.S.C. Sec. 1396a(a)(17)(D) precludes the Secretary from requiring states to include sibling income in computing income available to a family filing unit for the purpose of establishing Medicaid eligibility, and thus the Secretary may not define a filing unit under 42 U.S.C. Sec. 1396a(a)(17)(B) so as to require inclusion of a sibling and his or her income in the Medicaid family filing unit.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Otis R. Bowen is substituted for his predecessor, Margaret M. Heckler, Secretary of Health and Human Services, pursuant to Fed.R.App. 43(c)(1)
 
 
 [1]
 Deeming income allows the state to assume that income is available to an applicant, regardless of whether the income is actually available. Herweg, 455 U.S. at 267, 102 S.Ct. at 1062; Gray Panthers, 453 U.S. at 36, 101 S.Ct. at 2636. Deeming income thus has the effect of reducing both the number of individuals eligible for Medicaid and the amount of assistance paid to those who qualify. Id.; see also Herweg, 455 U.S. at 267, 102 S.Ct. at 1062; Lynch, 747 F.2d at 534-35
 
 
 [2]
 Appellee Vance is the mother of two children, Linda, age 17, and Guisseppe, age 8. From 1980 until 1984, Vance and Linda received AFDC in the amount of $368 per month. Guisseppe did not receive AFDC as he received social security survivor benefits in the amount of $472 per month. Following the enactment of DEFRA, Vance and Linda's AFDC and Medicaid benefits were terminated when Guisseppe's income was included as part of the family's income. Appellee Turner was 9 months pregnant at the time this lawsuit was filed. Turner lost her AFDC and Medicaid benefits in 1984 because one of her children received $542 per month in social security benefits
 
 
 [3]
 Sibling income is income which is received by siblings who have no duty to support the other members of the household. It can be from social security benefits, child support, or other sources
 
 
 [4]
 42 C.F.R. Sec. 435.602 provides:
 (a) Except for a spouse of an individual or a parent for a child who is under age 21 or blind or disabled, the agency must not--
 1) Consider income and resources of any relative available to an individual; nor
 2) Collect reimbursement from any relative for amounts paid by the agency for services provided to an individual.
 (b) The income and resources of spouses and parents must be considered in determining financial eligibility as provided for the categorically needy ... and medically needy....
 
 
 [5]
 Four other district courts have reached similar conclusions. See Reed v. Blinzinger, 639 F.Supp. 130 (S.D.Ind. 1986); Childress v. Heckler, No. 85-Z-1459 (D.Colo. Jan. 13, 1986); Malloy v. Eichler, 628 F.Supp. 582 (D.Del.1986); Sundberg v. Mansour, 627 F.Supp. 616 (W.D.Mich.1986)
 
 
 [6]
 The parties have not addressed whether the directive was ever published in accordance with the Freedom of Information Act, 5 U.S.C. Sec. 552(a)(1)(D). See Cubanski, 781 F.2d at 1428-29. Because of our disposition in this case, we will assume the directive was properly published