Curtis SNEEDE, by his guardian ad litem Georgia THOMPSON; Justin Thompson, by his guardian ad litem Georgia Thompson; Georgia Thompson, on her own behalf and as representative of her sons Curtis Sneede and Justin Thompson, Plaintiffs,

v.

Kenneth KIZER, Director, California Department of Health Services; California Dep't of Health Services; Jesse R. Huff, Director, California Department of Finance; California Department of Finance; Louis W. Sullivan, M.D., Secretary, United States Department of Health and Human Services; United States Dep't of Health and Human Services, Defendants.

Kenneth KIZER, et al., Defendants and Third Party Plaintiffs;

v.

Louis W. SULLIVAN, M.D., Secretary, United States Department of Health and Human Services, Third Party Defendant.

No. C 89–1932 TEH.

United States District Court, N.D. California.

Jan. 5, 1990.

Evelyn R. Frank, Alameda County Legal Aid Soc., Oakland, Cal., Jane Perkins, Standley L. Dorn, Nat. Health Law Program, Inc., Los Angeles, Cal., for plaintiffs.

John K. Van de Kamp, Atty. Gen., State of Cal., Ralph M. Johnson, Deputy Atty. Gen., San Francisco, Cal., for defendants.

Joseph P. Russoniello, U.S. Atty., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for third party defendant.

## DECISION AND ORDER

THELTON E. HENDERSON, District Judge.

This matter came before the Court on January 4, 1990, on plaintiffs' motion for partial summary judgment against the State defendants. There being no dispute of material facts, and plaintiffs having demonstrated entitlement to relief as a matter of law, the motion is granted for the reasons set forth below. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

1. A California class was certified by stipulated order on July 5, 1989. The class definition was modified by order of the Court on December 5, 1989, upon plaintiffs' unopposed motion to expand the definition of the class. As currently defined, the class consists of all California residents who, at any time on or after May 18, 1988 (for purposes of prospective relief) (1) applied for and/or received Medi–Cal benefits, or will apply for and/or receive such benefits; and (2) had or will have income or resources attributed to them from an individual other than a natural or adopted parent or a spouse; and (3) have been or will be determined to be ineligible for Medi–Cal on the basis of such resources; or (4) have been or will be determined to have a share of cost.

Plaintiffs first amended complaint (filed November 28, 1989) also seeks to represent a class of similarly situated individuals residing in all states within the jurisdiction of the Ninth Circuit Court of Appeals. (Amended Complaint at 3). No certification of this circuit-wide class has yet been sought.

2. Plaintiffs' amended complaint challenges the validity of an August 18, 1989 transmittal from the United States Department of Health and Human Services to all Medicaid state agencies. Plaintiffs contend that the transmittal requires states to presently enact regulations similar or identical to California's existing regulations.

## I

Curtis Sneede, on behalf of all similarly situated California residents,[1] challenges California's method for determining eligibility for Medi–Cal benefits. He contends that California, pursuant to section 50373 of the California Code of Regulations (22 C.C.R. § 50373), improperly attributes income and resources to Medi–Cal applicants and recipients from sources it is not allowed to under federal law. As a result, indigent persons are denied, in part or whole, medical assistance to which they would otherwise be entitled.

At this juncture, plaintiffs seek a partial summary judgment against the State defendants that 22 C.C.R. § 50373 is invalid. They also seek state-wide injunctive relief, but suggest deferring issues concerning implementation procedures and retroactive relief to future proceedings. No relief is sought against the Federal defendants at this time.[2]

## II

As a voluntary participant in the federal Medicaid program, California receives fed-

Accordingly, the amended complaint names as defendants the Secretary of the Department of Health and Human Services as well as the Department itself (collectively referred to as the Federal defendants), and circuit-wide relief.

While the amended complaint did not alter the claim which is the subject of this motion, federal defendants sought to forestall its consideration pending development of new federal regulations which may or may not incorporate the position taken in the August 18, 1989 transmittal. The Court rejected this suggestion as calling for lengthy and unnecessary delay. However, Federal defendants were provided an additional period to participate in the briefing on the instant motion given their potential interest in its resolution. *See* December 5, 1989 Order at 2. On December 14, 1989, Federal defendants responded that "the [instant] motion ... is premised upon allegations set forth in plaintiffs' original complaint and does not challenge the validity of any Federal statute, regulation, policy or practice. *Therefore, Federal defendant takes no position with respect to this motion.*" Federal Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment at 1 (emph. added). At argument, Federal defendants again declined to take any position on the merits of the motion. Accordingly, there is no basis for further delaying resolution of the issues raised at this time.

eral funding to provide medical assistance to needy persons.[3] In return, California must comply with various state plan requirements set forth in 42 U.S.C. § 1396a(a). *Cubanski v. Heckler*, 781 F.2d 1421, 1423 (9th Cir.1986). That section provides, in pertinent part, that:

"A State plan for medical assistance must—

.... (17) include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...

(D) *do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 ...*"

42 U.S.C. § 1396a(a)(17)(D) (emph. added).

This provision unambiguously limits financial responsibility for medical care to parents and spouses, for purposes of computing Medicaid eligibility. Thus, income and resources of a *spouse* are to be considered when determining the eligibility of the other *spouse*, and income and resources of a *parent* are to be considered when determining the eligibility of a *child*. In the absence of actual contribution, however, income from any other individual can not be considered. *See also*, 42 C.F.R. § 435.602.[4]

The Ninth Circuit Court of Appeals recently examined subsection (17)(D) in *Vance v. Hegstrom*, 793 F.2d 1018 (9th Cir.1986) and found that it prohibited mandatory consideration of sibling income in computing eligibility for Medicaid. While acknowledging that 42 U.S.C. § 1396a(a)(17)(B) grants the "Secretary broad powers to set standards to determine what income is available to a Medicaid recipient," 793 F.2d at 1020, the Court readily concluded that the unequivocal language of subsection (17)(D) precludes consideration of any income outside the spousal and parent-child relationships, including sibling income:

The **plain language** of subsection 17(D) explicitly prohibits the deeming[5] of income from persons other than a Medicaid applicant's spouse, or a parent in the case of a child who is under twenty-one, blind or permanently and totally disabled. There is no clearly expressed legislative intent to the contrary.

793 F.2d at 1024 (emph. added). *See also, Malloy v. Eichler*, 860 F.2d 1179, 1184 (3rd Cir.1988) (noting "Congress's **clear expression** of its intent [in § 1396a(a)(17)(D) ] that income should not be presumed available to others in the Medicaid context outside the parent-child and spousal relationships") (emph. added). The *Vance* Court specifically rejected the argument that Congress actually intended the family, as a unit, to be responsible for medical expenses, noting that there was no legislative history to support such a conclusion. *Id.*[6]

Despite the "plain language" of section 1396a(a)(17)(D), and the teachings of *Vance*, California's regulations impose financial responsibility for medical care on persons other than spouses and parents. Thus, California deems income and re-

**3.** The Medicaid program is known in California as Medi–Cal.

**4.** California Welfare & Institutions Code § 14008 also comports with § (17)(D). It provides in pertinent part,
(a) No relative, other than the spouse, shall be held to be financially responsible for the cost of health care received by an adult ...
(b) No relative, other than the parent or parents of a child under the age of 18 years, shall be held to be financially responsible for the cost of health care or related services received by such child ..."

**5.** Deeming income "allows the state to assume that income is available to an applicant, regardless of whether the income is actually available." *Vance*, 793 F.2d at 1029, n. 1. (footnote not in original).

**6.** *Vance* was subsequently followed by numerous other jurisdictions. *See Malloy v. Eichler*, 860 F.2d 1179, 1180 (3rd Cir.1988); *Mitchell v. Lipscomb*, 851 F.2d 734, 735 (4th Cir.1988); *Sundberg v. Mansour*, 847 F.2d 1210 (6th Cir. 1988) (aff'g district court upon divided vote of *en banc* panel); *State of Georgia Dep't of Medical Assistance v. Bowen*, 846 F.2d 708 (11th Cir.1988); *Childress v. Bowen*, 833 F.2d 231 (10th Cir.1987); *Olson v. Norman*, 830 F.2d 811 (8th Cir.1987); *Reed v. Blinzinger*, 816 F.2d 296 (7th Cir.1987).

sources, for purposes of Medicaid eligibility, from (a) stepparents to stepchildren, (b) from children to parents, (c) from children to their siblings, and half-siblings, (d) between unmarried persons who are cohabiting, (f) from unmarried persons to the children of individuals with whom they are cohabiting, and (g) from children to unmarried persons with whom their parents are cohabiting.

Specifically, 22 C.C.R. § 50371 provides that the Multi Benefit Family Unit [MFBU] is "the basic unit of persons considered in determining a person's or family's [Medi–Cal] eligibility ..." Thus, in general, the income and resources of all persons in the MFBU are considered in determining Medicaid eligibility for any MFBU member. The regulations further provide that *"all family members living in the home ... shall be included in the [Multi Family Benefit Unit] ... whether or not they are eligible for, or wish to receive, Medi–Cal."* 22 C.C.R. § 50373(a)(2) (emph. added). Section 50373(a)(5) applies this principle to a variety of household configurations, with the results described above.[7]

### III

We agree with plaintiffs that 22 C.C.R. § 50373 violates 42 U.S.C. § 1396a(a)(17)(D). The "plain meaning of the words chosen by Congress is controlling in the absence of a clearly expressed legislative intent." *Vance*, 793 F.2d at 1023. As discussed above, and as the Ninth Circuit has held, subsection (17)(D) is unambiguous: states may not deem income and resources from *any* individual (absent actual contribution) except from a spouse to a spouse or a parent to a child for purposes of computing Medicaid eligibility. There is no clearly expressed contrary legislative intent. *Vance*, 793 F.2d at 1024. Accordingly, the plain meaning of

§ 1396a(a)(17)(D) controls, and California must discontinue its contrary practices.

Significantly, the State defendants make no serious effort to reconcile 22 C.C.R. § 50373 with the language of § 1396a(a)(17)(D). Rather, they argue that California's regulations should be upheld because they are not inconsistent with proposed regulations recently published by the Secretary of the Department of Health & Human Services. However, given the lack of ambiguity in § 1396a(a)(17)(D), and the authority cited above, the fact that California's regulations may comport with as yet unadopted federal regulations—the validity of which is also open to challenge (*see* n. 2, *supra*)—has little persuasive value.

California also points to a "voluntary child exclusion provision" to demonstrate that California's regulations avoid the mandatory sibling deeming found objectionable by the Ninth Circuit in *Vance*. As explained, below, however, California's attempt to distinguish, or perhaps more accurately circumvent, *Vance* based on this provision, is unavailing.

If a married couple has mutual and/or separate children, section 50373 generally requires that all of the children be in the same MFBU—which results in the improper deeming of income between full, half, and step siblings. The "voluntary child exclusion provision," embodied in 22 C.C.R. § 50381, allows parents the option of excluding a child from the MFBU if the child has separate income (e.g. child support or social security) or property. Although the child's income will then not be deemed to other family members (consistent with § (17)(D)), the *excluded child will then be precluded from applying for Medi–Cal benefits*, even if the child's income is insufficient to cover necessary medical expenses. 22 C.C.R. § 50381. Conversely, if the family "voluntarily opts" to keep the

---

**7.** Thus, with respect to children living with a natural parent, except in certain circumstances, all members of the household, including siblings, half-siblings, the natural parent, and the spouse or unmarried partner of the parent are required to be in a single MFBU, in order for any member of the household to receive full Medi–Cal services.

In the case of unmarried parents who are living together, each parent may be in a separate MFBU with his or her children, but their mutual children will not then be eligible for Medicaid.

child in the MFBU, so that s/he may apply for Medi–Cal benefits, the child's assets *will be deemed to other family members in the MFBU,* contrary to the express language of § (17)(D).

We acknowledge that *Vance* struck a rule which *mandated* consideration of sibling income, whereas this particular result can be avoided in California by "voluntarily excluding" children from a MFBU, but *the child must then forego any Medicaid assistance.* This sort of conditional "voluntary exclusion provision" is just as inconsistent with the unqualified language of subsection (17)(D) as a mandatory rule. There is not the slightest hint that Congress' plainly expressed deeming limitations may be ignored because a child seeks Medicaid assistance.[8] Stated differently, there is not the slightest hint that Congress only intended subsection (17)(D) to apply if the family pays the price of excluding its children from eligibility for Medicaid. Simply put, section (17)(D) does not permit imposition of such a Hobson's choice.

California also points to a similar "voluntary stepfamily exclusion provision" as a means for avoiding stepparent deeming prohibited by subsection (17)(D). However, this exclusion provision is no more helpful to California than the "child exclusion provision" discussed above.

Normally, section 50373 requires that, in stepparent families, all of the couple's mutual and separate children be with them in the same MFBU, which results in improper deeming between stepparents and stepchildren. The "stepfamily exclusion provision" allows a stepfamily household to elect to receive Medi–Cal benefits *only for the separate child(ren) of one parent.* 22 C.C.R. § 50375. If this option is elected,

only the separate children and the ineligible natural parent would be included in the MFBU, and thus only their income would be considered (consistent with § (17)(D)). *Id.*[9] However, *no other family members* (besides the separate children of one parent) *can then apply for Medi–Cal benefits. Id.* Conversely, in order for other family members to receive medicaid assistance, all members must be included in the MFBU and thus subject their income and resources to deeming beyond that allowed by subsection (17)(D). Again, there is simply no basis for concluding that subsection (17)(D)'s deeming restrictions need only be observed where the stepfamily "voluntarily chooses" to limit medicaid assistance to the separate children of one parent.

In short, section 50373 does not mandate the deeming of sibling and stepparent income, given the "voluntary exclusion" options described above. It is no less invalid, however, than the mandatory rule struck in *Vance* because the only way to avoid improper sibling or stepparent deeming is to preclude children and/or other family members from applying for Medicaid. And if the above authorities make anything clear, it is that section 1396a(a)(17)(D) sets forth an absolute rule, the applicability of which does not hinge on precluding a child or any other member of the family from applying for Medicaid. Thus, the State's attempt, in effect, to restrict application of subsection (17)(D), through back door conditions nowhere contemplated by Congress, must be rejected. Indeed, we conclude that the "voluntary exclusion provisions," rather than demonstrating compliance with subsection (17)(D), only serve to highlight the State's disregard for a clear and unconditional federal law.[10]

---

**8.** As explained earlier, in order for the child to receive Medi–Cal benefits, s/he must be included in the MFBU. As a result, his/her income and resources will be deemed to other family members in contravention of subsection (17)(D).

**9.** A portion of the stepparent's income, however, is still attributed to the spouse, under 22 Cal. Reg. §§ 50559–50561, and therefore indirectly attributed to the spouse's separate children.

**10.** It is also highly questionable whether the "choices" presented by the voluntary exclusion provisions can be exercised in a truly voluntary fashion. If a child has any significant medical needs, his/her inclusion in the MFBU will most likely be a matter of economic necessity rather than a "voluntary choice." Consequently, the family will, in effect, be forced to accept unlawful deeming of that child's income to other family members. The named plaintiff's circumstances in this case are illustrative of the dilemmas posed by California's regulations.

Moreover, even assuming a family chose to utilize one or both of the exclusions, California regulations would still result in improper deeming. For example, these exclusions would not affect that portion of section 50373 which provides for the deeming of income between unmarried persons who are cohabiting. And as noted above, under the stepfamily exclusion provision, some stepparent income may still be improperly deemed to stepchildren through the spouse.

Finally, we observe that the implicit premise underlying the State's position—that as a matter of policy, total family resources should be considered when determining Medicaid eligibility, regardless of actual contribution—has met with consistent rejection by the courts.

For example, in *State of Georgia Dep't of Medical Assistance v. Bowen*, 846 F.2d 708 (11th Cir.1988) the Eleventh Circuit Court of Appeals rejected the argument that, by expanding deeming rules for the Aid to Families with Dependent Children program [AFDC], Congress intended to graft a "nuclear family responsibility" requirement into the Medicaid Act despite the plain meaning of section 1396a(a)(17)(D):

> We are simply unwilling to presuppose that when Congress changes AFDC eligibility standards, it intends also to change Medicaid eligibility standards. Indeed, that it is logical to differentiate between AFDC eligibility and Medicaid eligibility is reflected by the nature of the benefits. The kind of benefits for which AFDC provides, housing and food, are shared by family members, so it could be argued that all of the financial resources of teh family should be pooled in determining whether AFDC assistance is required. Medicaid benefits, however, are not shared in this manner, but rather pay for individual health care only, and do not become a part of a common resource. *Thus, while the policy that all family members should contribute to the family's communal expenses may be persuasive in the AFDC context, it has no applicability in the Medicaid context where the assistance is not used for a communal expense.*

846 F.2d at 712; *See also, Malloy*, 860 F.2d at 1184 (same reasoning); *Vance*, 793 F.2d at 1024 (rejecting application of nuclear family concept to Medicaid program); *Ward v. Wallace*, 652 F.Supp. 301, 305–06 (M.D.Ala.1987), *amended*, 658 F.Supp. 441 (same). Thus, section 50373 can not be defended on the ground that Congress actually intended to impose responsibility for medical care on all family members.

### IV

In light of all the foregoing, it is HEREBY ORDERED as follows:

1. Plaintiffs' motion for a partial summary judgment that 22 C.C.R. § 50373 violates 42 U.S.C. § 1396a(a)(17)(D) is GRANTED.

2. Defendants Department of Health Services (hereinafter "DHS") and Kenneth Kizer are HEREBY ENJOINED from enforcing any rule or policy that results in consideration, in the absence of an actual contribution, of the income or resources of any individual other than a parent of a child who is under twenty-one, blind or disabled, or a spouse for purposes of determining eligibility or the amount of the share of cost of any other individual who is applying for or receiving Medi–Cal benefits.

3. Within 30 days of the date of this order, defendants DHS and Kizer shall con-

---

Curtis Sneede, developmentally disabled, is the adopted son of Mrs. Thompson alone. Mr. and Mrs. Thompson also recently had a natural child, Justin. Under §§ 50373 and 50381, Mrs. Thompson would have had to forego Medi–Cal for Curtis Sneede, despite his medical needs, in order to avoid deeming of his social security income to Justin and herself, which would adversely affect their level of Medi–Cal assistance. The family could have applied for Medi–Cal for Curtis alone (under the stepfamily exclusion), and thereby avoided the deeming of Curtis' step-

father's pension and social security income to Curtis, prohibited by section 1396a(a)(17)(D); however, Mrs. Thompson would then have had to forego Medi–Cal benefits for her complicated pregnancy and delivery, because under the "stepfamily exclusion provision" only the separate children of one parent are eligible for Medi–Cal benefits. To conclude that this family would have "voluntarily" included either Curtis or Mrs. Thompson in the MFBU would be to indulge in fiction over fact.

fer with plaintiffs' counsel and attempt to reach agreement with respect to instructions for implementing this order. In the event that agreement is reached, the instructions shall be filed with this Court and transmitted to California county welfare departments no later than 45 calendar days from the date of this order. If no agreement is reached, plaintiffs and defendants DHS and Kizer shall each file proposed instructions together with a supporting memorandum on or before 45 calendar days from the date of this order. Opposing memorandum shall be filed within 10 calendar days of service of the proposed instructions. The matter will then be deemed submitted on the papers unless the Court orders otherwise.

4. Within five working days from the date of this order, defendants DHS and Kizer shall instruct California county welfare departments to identify the members of the class, as certified by this Court's order of December 5, 1989. Defendants DHS and Kizer shall instruct such welfare departments to complete identification of the aforesaid persons within 60 days from the date of this order. Prior to sending such instructions, defendants DHS and Kizer shall provide plaintiffs' counsel with a reasonable opportunity to comment on them. In the event that plaintiffs conclude that the instructions are deficient, they may seek further relief from this Court.

IT IS SO ORDERED.