Monalisa WARD, etc., et al., Plaintiffs,

v.

George C. WALLACE, etc., et al., Defendants.

Civ. A. No. 84–T–1612–N.

United States District Court, M.D. Alabama, N.D.

Jan. 5, 1987.

Charles G. Spradling, Jr., Birmingham, Ala., Lawrence F. Gardella and Tamara Young, Montgomery, Ala., for plaintiffs.

John C. Bell, U.S. Atty., Kenneth Vines, Asst. U.S. Atty., Montgomery, Ala., and James N. Stephens, Acting Regional Atty., Edgar M. Swindell, Asst. Regional Atty., Dept. of Health and Human Services, Atlanta, Ga., for defendant Heckler.

Charles A. Graddick, Atty. Gen., Montgomery, Ala., and Herman H. Hamilton, Jr., Sp. Asst. Atty. Gen., Shapard D. Ashley, Counsel, Montgomery, Ala., for defendants Wallace & Baggiano.

Mary Lee Stapp, James E. Long, Asst. Attys. Gen., Alabama Dept. of Pensions & Security, Montgomery, Ala., for defendant Frazier.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This class action lawsuit is a challenge to the policy of the Alabama Medicaid program of automatically including the income of an applicant's siblings and grandparents when determining the applicant's financial eligibility to receive Medicaid benefits. The plaintiffs, who have been denied participation in the state Medicaid program because of this policy, ask the court to declare that the policy impermissibly conflicts with federal law and to award the plaintiff class appropriate relief.

For reasons that follow, the court concludes that the challenged policy violates federal law and that the plaintiff class is thus entitled to appropriate relief.

## I. BACKGROUND

The Medicaid program was established under Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396, et seq., as a cooperative program between state and federal governments to pay the costs of medical treatment for needy persons. States are not obligated to participate; however, if a state chooses to take part, the federal government will provide substantial funds to match a specified state contribution and, in turn, the state must comply with federal requirements for the program. Participating states must provide assistance to all individuals specified as "categorically needy." 42 U.S.C.A. § 1396a(a)(10)(A). This group includes persons who receive benefits under the Aid to Families with Dependent Children (AFDC) program, authorized under Title IV-A of the Social Security Act, 42 U.S.C.A. §§ 601, et seq., and persons who would be eligible for AFDC except for an eligibility requirement used in that program that is specifically prohibited under Medicaid. 42 U.S.C.A. § 1396a(a)(10)(A)(i)(I); 42 C.F.R. § 435.114. Medicaid eligibility is therefore closely linked to eligibility for AFDC assistance, and thus any understanding of Medicaid also requires an understanding of AFDC.

AFDC was enacted to "encourag[e] the care of dependent children in their own homes or in the homes of relatives." 42 U.S.C.A. § 601. AFDC is similar to Medicaid in the sense that it is a cooperative effort between state and federal governments, with the states agreeing to administer the program locally and comply with federal requirements in return for federal financial support. AFDC assistance is available to dependent children in households were one parent is absent or is physically or mentally incapacitated.

Applicants for AFDC are called family "filing units." In order to qualify for the benefits, applicants must meet specified standards of financial need. 42 U.S.C.A. § 606(a). Prior to the 1984 enactment of the Deficit Reduction Act (DEFRA), P. Law No. 98–369, 98 Stat. 1145, an AFDC filing unit did not have to include all family members residing in one household. A family or household applying for AFDC benefits could exclude from the filing unit those household members who had income sufficient to reduce the household's eligibility for benefits. As such, a minor parent

living with her children was considered to be a distinct filing unit for AFDC purposes, even if they were residing with a parent of the minor-parent, that is, the grandparent of the children. Similarly, a household could exclude from its application a child who received sufficient independent income to render the child ineligible for AFDC benefits.

Several changes were made in AFDC eligibility requirements by section 2640 of DEFRA; among them were the automatic inclusion of sibling income and, in certain circumstances, grandparent income. 42 U.S.C.A. § 602(a) as amended by paragraphs (38) and (39).[1] The effect of the DEFRA changes was to render ineligible for AFDC benefits a significant number of households that had previously been eligible.

The crux of this lawsuit is whether the AFDC changes in eligibility requirements imposed by DEFRA can properly be applied to Medicaid eligibility determinations as well. The Alabama Medicaid program has, since 1984, been administered as if the AFDC eligibility changes required by DEFRA did in fact also alter the standards for Medicaid eligibility. The plaintiffs filed this lawsuit to challenge this policy.[2] This court has certified this suit as a class action with the plaintiffs representing all similarly situated persons.

There is no question that the named class representatives have been affected by the challenged policy. During 1984, plaintiff Monalisa Ward, a 17-year-old minor parent, and her infant daughter were denied Medicaid benefits by the Alabama program due to the inclusion of income from Ward's mother, the grandmother of Ward's infant daughter, with whom Ward and her daughter were residing. Plaintiffs Eula Givner and Julia Hails had their Medicaid benefits terminated in 1984 due to the inclusion of income from child support or Social Security benefits received by one child in their respective households as available for the support of that child's siblings in the same home. Givner lost Medicaid coverage for herself and three of her four children due to child support income received by the fourth child. Hails, who acts as caretaker for her deceased sister's three children, lost Medicaid coverage for two of the three children due to inclusion of Social Security benefits the third child receives.

The defendants are Otis R. Bowen, Secretary of the United States Department of Health and Human Services, who is responsible for administration of the federal AFDC and Medicaid programs; George C. Wallace, Governor of the State of Alabama, and Faye S. Baggiano, Commissioner of the Alabama Medicaid Agency, who are responsible for administration of the state Medicaid program; and Gwendolyn H. Williams, Commissioner of the Alabama Department of Pensions and Security, who is responsible for administration of the state AFDC program.

## II. THE SECRETARY'S ARGUMENTS

The court will first address the arguments of the Secretary of the Department

---

**1.** Section 2640 of DEFRA, codified at 42 U.S.C.A. § 602(a)(38) and (39), states:

A State plan for aid and services to needy families with children must

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in ... this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determina-

tion and applying such paragraph with respect to the family ...; and

(39) provide that in making the determination under paragraph (7) with respect to a dependent child whose parent or legal is under the age selected by the State pursuant to section 606(a)(2) of this title, the State agency shall (excepted as otherwise provided in this part) include any income of such minor's own parents or legal guardians who are living in the same home as such minor and dependent child, to the same extent that income of a stepparent is included under paragraph (31).

**2.** The plaintiffs do not challenge the termination of their AFDC benefits as a result of DEFRA.

of the Health and Human Services. The Secretary supports the Alabama Medicaid program's policy only to the extent that it provides for the automatic inclusion of sibling income when making Medicaid eligibility determinations. The Secretary does not support the state program's policy of automatically including grandparent income; for reasons the court need not discuss, the Secretary draws a distinction between the automatic inclusion of sibling income and grandparent income.

### A.

■ The Secretary correctly observes that the Alabama Medicaid program's policy regarding sibling income is based on an official interpretation issued by the Secretary pursuant to Congress's broad delegation of authority to him to determine, in accordance with the law, the amount of income available to a Medicaid applicant. *Vance v. Hegstrom*, 793 F.2d 1018, 1023 (9th Cir.1986); *see also Herweg v. Ray*, 455 U.S. 265, 274–75, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); *Schweiker v. Gray Panthers*, 453 U.S. 34, 43–44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). The Secretary's interpretation may therefore be rejected and overturned by this court only if the interpretation exceeds statutory authority given the Secretary or is arbitrary and capricious. *Herweg*, 455 U.S. at 275, 102 S.Ct. at 1066; *Gray Panthers*, 453 U.S. at 44, 101 S.Ct. at 2640. For reasons that follow, the court agrees with the plaintiffs that the Secretary's interpretation on the automatic inclusion of sibling income, as well as the state policy based on that interpretation, conflicts with the law and that therefore the interpretation exceeds the statutory authority given the Secretary.

### B.

The plaintiffs contend that the Alabama Medicaid program's automatic inclusion of sibling income to determine eligibility for Medicaid violates two Medicaid provisions in the Social Security Act, in particular subsections (17)(B) and (D) of 42 U.S.C.A. § 1396a(a). These two subsections provide that a state's Medicaid program must

> include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...
>
> (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ...
>
> (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or...., is blind or permanently and totally disabled,....

42 U.S.C.A. § 1396a(a)(17)(B) & (D).

■ Subsection (17)(B) therefore requires Medicaid determinations to be made only on the basis of income "available to the applicant." The term "available" has been interpreted to include not only income actually in the hands of the applicant, but also income which, in the parlance of Social Security laws and regulations, may be "deemed," that is reasonably presumed, available to the applicant, irrespective of whether it is actually available. *Herweg*, 455 U.S. at 267, 102 S.Ct. at 1063; *Gray Panthers*, 453 U.S. at 44–48, 101 S.Ct. at 2640–42. Subsection (17)(B), read alone, could thus be understood as authorizing state Medicaid officials to include all income they may want, within reason, to deem available to an applicant as well as all income they find to be actually available to the applicant. However, subsection (17)(B) should not be read alone; rather, it should be read in conjunction with subsection (17)(D), *see Herweg, supra; Gray Panthers, supra*, which specifically restricts the deeming authority of state officials to include only the income of the spouse of the applicant and the parent of the applicant where the applicant is a minor, blind or disabled.

The statutory and regulatory scheme that therefore emerges from subsections

(17)(B) and (D), as read together and interpreted by the Supreme Court, restricts state officials to making Medicaid eligibility determinations on the basis of, first, income *actually* available to the applicant and, second, all income from the applicant's spouse or, in certain circumstances, the applicant's parent, which state officials may want to *deem* available to the applicant.

The plaintiffs here do not challenge the inclusion of sibling income that is actually available to the Medicaid applicant; rather, they object to the Alabama Medicaid program's *automatic* inclusion of sibling income, that is, the deeming of such income as available irrespective as to whether it is actually available.

It is clear that the Alabama Medicaid program's automatic inclusion of sibling income violates the restrictions of subsections (17)(B) and (D): because the inclusion is automatic, it is not based on income that is actually available, and because the automatic inclusion is for sibling income it is obviously not restricted to the income of an applicant's spouse or parent. The state program's policy clearly falls outside the limits permitted by subsections (17)(B) and (D), and thus violates these subsections.

### C.

In his effort to support his interpretation on including sibling income, the Secretary makes interesting, but nonetheless tortured and meritless, attempts to evade the Medicaid restrictions of subsections (17)(B) and (D).

Relying on the AFDC statutory and regulatory scheme, the Secretary first points out that AFDC's inclusion of sibling income does not constitute deeming. He argues that DEFRA authorized the inclusion of sibling income by expanding the AFDC filing unit to include siblings, rather than by deeming the income of sibling income from outside the filing unit. He maintains that, within the AFDC framework, the income of those persons within the filing unit is not considered to be deemed to the unit; rather, deeming would be the inclusion of income of someone from outside the unit. The Secretary then concludes that, because sibling income is not deemed income within the AFDC program, it is also not deemed income within the Medicaid program and thus does not fall within the restrictions of subsections (17)(B) and (D).

In his effort to evade the Medicaid income restrictions, the Secretary has, at best, improperly and without statutory basis attempted to engraft AFDC's statutory and regulatory scheme onto Medicaid's, and, at worst, greatly confused the two schemes. The AFDC statutory and regulatory scheme may very well work in terms of "filing units," with only income from outside a filing unit considered "deemed" to the unit. The Medicaid statutory and regulatory scheme, however, works in terms of "actual income," with all income other than actual income considered "deemed" income *and* with authorized deemed income specifically restricted to that of the applicant's spouse and parents. "Filing unit income" and "actual income" are therefore not the same, and, accordingly, "deemed income" within the context of the two programs is not the same; deemed income within the two programs is by definition different. What is filing unit income under AFDC may well be deemed income under Medicaid; indeed, this is the case here.

Admittedly, sibling income by DEFRA and AFDC standards may always be filing unit income and therefore not deemed income. However, sibling income is not always actual income under Medicaid; only sibling income actually received by the applicant would be actual income, a conclusion which the plaintiffs concede. Under Medicaid, sibling income could therefore be only deemed income, and subsections (17)(B) and (D) prohibit state officials from including such income when making Medicaid eligibility determinations.

The Secretary responds that the court should apply to the Medicaid program a concept which he calls the "nuclear family," a concept virtually synonymous with

the "filing unit" concept in the AFDC program. He argues that income from within the nuclear family, from a sibling, should not be considered as deemed, and that only income from outside the nuclear family should be. The Secretary then offers extensive, and perhaps even somewhat reasonable, policy arguments as to why the Medicaid program should include such a concept.

It is apparent that, with the nuclear family concept, the Secretary is, in effect, asking this court to engraft the AFDC filing unit concept onto the Medicaid program. Such engrafting, however, has no basis whatsoever in the law. The Medicaid statutory and regulatory scheme, unlike the AFDC scheme, simply does not operate according to such concepts as the "filing unit" and the "nuclear family."

### D.

The Secretary also maintains that the statutory relationship between the two Medicaid provisions, subsections (17)(B) and (D), is not as previously described by the court. He admits that subsection (17)(B) broadly authorizes a Medicaid program to include all income, both that which is actually available and that which is deemed. He disagrees, however, that subsection (17)(D) then broadly restricts any deeming except as to an applicant's spouse and, in certain circumstances, an applicant's parents; he contends that the subsection's restrictions on deeming are much more narrow.

The Secretary contends that subsection (17)(D)'s deeming restrictions should be strictly limited to instances where there is a relationship of legal responsibility between the person whose income is sought to be deemed to the applicant and the applicant; in other words, the subsection prohibits deeming only in instances where the relationship between the applicant and the person whose income is sought to be deemed is one in which said person is "legally responsible" for the applicant. The Secretary argues that such an interpretation is implicit from the use of the words "financial responsibility" in subsection (17)(D). He also argues that the two exceptions to the subsection's prohibitions—income of the applicant's spouse and, in certain circumstances, the applicant's parents—connote that the subsection was intended to apply only in instances where there is a relationship of legal responsibility; the Secretary notes that, as a general proposition, spouses are by law financially responsible for each other, and that a parent is by law financially responsible for a dependent child. The Secretary then concludes that subsection (17)(D)'s prohibition on deeming does not apply to the income of an applicant's sibling because siblings are not required by law to be financially responsible for each other.

The Secretary's interpretation of subsection (17)(D) is due to be rejected as meritless for, at least, three reasons. First, the legislative history reflects that the subsection's prohibition was not intended by Congress to be strictly limited to instances where a person is legally responsible for an applicant; rather, the history indicates that Congress intended that subsection (17)(D)'s prohibitions reach any effort by a Medicaid program to include income where there is no evidence that the income is actually available. *See* S.Rep. No. 404, 89th Cong., 1st Sess. 78 (Finance Committee) (June 30, 1965), *reprinted in* 1965 U.S. Code Cong. & News 1943, 2018; *accord* H.Rep. No. 213, 89th Cong., 1st Sess. 68 (Ways and Means Committee) (March 29, 1965).[3] The Supreme Court recognized as much when it

---

3. S.Rep. No. 404 provides in part as follows: Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary) are actually available to the applicant or recipient.... Income and resources taken into account, furthermore, must be reasonably evaluated by the States. These provisions are designed so that the States will not assume the availability of income, which may not, in fact, be available or overevaluate income and resources which are available. Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual.

observed in *Gray Panthers* that "Congress was wary of imputing the income of others to a Medicaid applicant." 453 U.S. at 47, 101 S.Ct. at 2642.

Second, the Secretary's own regulations refute such a narrow interpretation of subsection (17)(D). 42 C.F.R. § 435.602 (a)(12), which implements subsection (17)(D), provides:

(a) Except for a spouse of an individual or a parent for a child who is under age 21 or blind or disabled, the agency must not—

(1) Consider income and resources of any *relative* available to an individual.

(Emphasis added.) This regulation clearly does not restrict subsection (17)(D)'s prohibition on deeming to instances where there is a relationship of legal responsibility between the person whose income is sought to be deemed and the applicant.

Finally, the Secretary's narrow interpretation of subsection (17)(D) defies reason and common sense. Congress enacted the subsection because it was deeply concerned about imputing income. *Gray Panthers*, 453 U.S. at 47, 101 S.Ct. at 2642. In addressing this concern, Congress surely did not intend, as a general proposition, to disallow deeming in instances where the person whose income was sought to be deemed was by law financially responsible for the applicant while at the same time allowing it where no such relationship existed. If anything, it is more reasonable to assume that Congress, if anything, intended the converse, to allow deeming for the most part in the former instances and disallow it in the latter. Indeed, this is just what subsection (17)(D) does: it permits deeming in most instances where a person is traditionally required by law to be financially responsible for the applicant, that is, between spouses and between a parent and his or her child; and it prohibits deeming in all instances where such a responsibility has not traditionally existed.

**E.**

The Secretary recently unearthed legislative history which he contends supports his view that the DEFRA changes in AFDC requirements for sibling income were expected by Congress to effect a corresponding cutback in Medicaid coverage. The materials he invokes include two Senate Finance Committee Reports relating to a 1983 bill similar to section 2640 of DEFRA and a House Ways and Means Committee report on a 1982 proposal submitted by the Reagan administration. S.PRT. 98–57, Senate Committee on Finance, 98th Cong., 1st Sess., "Background Data and Materials on Fiscal Year 1984 Spending Reduction Proposals," at pp. 19, 27–28; S.PRT. 98–13, Senate Committee on Finance, 98th Cong., 1st Sess., "Data and Materials for the Fiscal Year Finance Committee Report Under the Congressional Budget Act," at p. 76; WMCP: 97–31, House Ways and Means Committee, 97th Cong., 2d Sess., "Description of the Administration's Legislative Recommendations Under the Jurisdiction of the Committee on Ways and Means," at p. 33.[4]

The court is of the opinion that these historical notes do not indicate congressional support for the Secretary's contention

---

The committee has heard of hardships on certain individuals by requiring them to provide support and to pay for the medical care needed by relatives. The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, if able, for medical care. Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group. Thus, States may not include in their plans provisions for requiring contributions from relatives other than a spouse or the parent of a minor child or children over 21 who are blind or permanently and totally disabled. Any contributions actually made by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance.

**4.** The Secretary cites as significant a provision of one Finance Committee report that states:

*Impact of changes in other program*—The Administration budget is proposing a number of changes in AFDC which will reduce AFDC

that AFDC changes wrought by DEFRA also apply to Medicaid. The reports offered were prepared by staff personnel of members of Congress. They do not reflect the legislature's intentions when it passed DEFRA. *See Vance v. Hegstrom,* 793 F.2d 1018 (9th Cir.1986). Rather, the excerpts merely reflect the administration's hopeful views that changes in AFDC would also affect Medicaid eligibility. These views cannot be attributed to Congress.

Moreover, the Senate Finance Committee reports related to a provision similar to section 2640 of DEFRA, not to section 2640 itself. The provision the reports related to was never adopted by Congress. The reports therefore addressed nothing more than "unsuccessful attempts at legislation" which were rejected by Congress in conference committee, and are thus "not the best of guides to legislative intent." *Red Lion Broadcasting Co. v. Federal Communications Commission,* 395 U.S. 367, 382 n. 11, 98 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969) (citations omitted.)

Finally, even if the materials uncovered by the Secretary had been attributable to Congress, their terms are too vague to persuade the court that the legislature intended section 2640 of DEFRA to apply to Medicaid. References in the materials—such as "medicaid savings" that are "anticipated" due to the link between AFDC and Medicaid eligibility—do not demonstrate a

congressional desire to alter the meaning of the plain restrictive language of subsections (17)(B) and (D) of the Medicaid provisions. These reports fail to recognize the conflict between the suggestions of change they offer and the presence of subsections (17)(B) and (D). Where such a conflict exists, courts should be "unwilling to assume that these ... Committee statements constituted advice to ignore the provisions of a duly enacted law...." *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978).

### III. THE STATE DEFENDANTS' ARGUMENTS

The state defendants make the same arguments for including grandparent income when making Medicaid eligibility determinations as the Secretary makes for including sibling income. The court rejects the state defendants' arguments regarding grandparent income for the same reasons the court rejects the Secretary's arguments regarding sibling income.

The state defendants also proffer an alternative argument, based on a theory of "comparability," to support their contention that both sibling and grandparent income should be included when making Medicaid eligibility determinations. The state defendants observe that 42 U.S.C.A. § 1396a(a)(17) provides, in part, that state Medicaid programs must

caseloads. Since medicaid eligibility is linked to eligibility for AFDC, medicaid savings are also anticipated.... The Administration estimates reductions in outlays for fiscal year 1984 of $93 million due to AFDC changes. S.PRT. 98–13, Senate Committee on Finance, 98th Cong., 1st Sess., "Data and Materials for the Fiscal Year Finance Committee Report Under the Congressional Budget Act," at p. 76.

A second report cited by the Secretary describes the administration's view of the effect of the proposed alteration in AFDC eligibility requirements:

*Description of Proposal:*

Under the administration's proposal, the needs and income of all related children (except SSI disabled children) would be considered in determining AFDC eligibility and benefit amounts. This would include social security survivor's benefits and child support payments which are legally paid on behalf of a particular child. In addition, the needs and

income of parents of minor children would have to be considered. This would mean that a mother, who is a minor and living with her parents, could not be considered to be the head of a separate AFDC unit and independent of her parents' income and resources. *IMPACT:*

The administration estimates savings of $16 million in fiscal year 1982, $63 million in 1983, and $67 million in 1987. The administration estimates that 28,000 AFDC families would lose eligibility as the result of this change, and 74,000 would receive reduced benefits. This implies an average loss of $1,140 per family in 1983 *plus loss of automatic eligibility for medicaid for those families made ineligible.*

WMCP: 97–31, House Ways and Means Committee, 97th Cong., 2d Sess., "Description of the Administration's Legislative Recommendations Under the Jurisdiction of the Committee on Ways and Means," at p. 33 (emphasis added.)

include reasonable standards (*which shall be comparable for all groups ...*) for determining eligibility for and the extent of medical assistance under the plan....

(emphasis added.) The state defendants then argue that the comparability required by this provision is between Medicaid and AFDC, with the result that the eligibility standards for Medicaid must be the same as those for AFDC.

The state defendants' argument is wholly meritless. First, the comparability required by this provision is among groups *within the Medicaid program,* not to comparability between the Medicaid program and other programs. Second, the state defendants' argument completely overlooks the special restrictions placed on Medicaid eligibility determination by subsections (17)(B) and (D) of the Medicaid provisions in the Social Security Act; indeed, the state defendants' argument would have the illogical result of rendering these restrictions a nullity.[5]

### IV. CONCLUSION

With this ruling, the court joins a growing number of jurisdictions in rejecting arguments similar to those advanced here. Thus far, at least seven other federal courts have entertained challenges similar to this. *See Vance v. Hegstrom,* 793 F.2d 1018 (9th Cir.1986); *Reed v. Blinzinger,* 639 F.Supp. 130 (S.D.Ind.1986); *Sundberg v. Mansour,* 627 F.Supp. 616 (W.D.Mich. 1986); *Childress v. Heckler,* No. 85–Z–1459 (D.Colo. January 13, 1986); *Malloy v. Eichler,* 628 F.Supp. 582 (D.Del.1986); *Gibson v. Puett,* 630 F.Supp. 542 (M.D.Tenn. 1985); *Olson v. Reagen,* No. 85–101–A (S.D.Ia. April 11, 1985) [Available on WESTLAW, DCTU database]. *Cf. Massachusetts Association of Older Americans v. Sharp,* 700 F.2d 749, 753 (1st Cir.1983) (stepparent income may not be automatically included when determining Medicaid eli-

gibility). Without exception, these courts have found that the automatic inclusion of sibling and grandparent income in determining Medicaid eligibility contravenes federal law, in particular subsections (17)(B) and (D) of the Medicaid provisions in the Social Security Act.

This court will therefore afford the plaintiff class the following relief. First, the court will declare that the Alabama Medicaid program's policy of automatically including sibling and grandparent income when determining Medicaid eligibility violates subsections (17)(B) and (D) of the Medicaid provisions in the Social Security Act; and, second, the court will enjoin the state defendants from further enforcing this policy. Third and finally, the court will afford the plaintiff class any additional relief to which they claim they are entitled and to which by fact and law they are indeed entitled; the court will, however, first give the parties an opportunity to agree upon such additional relief.

An appropriate judgment will be entered.

### JUDGMENT AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of the plaintiffs and the plaintiff class and against defendants Otis R. Bowen, as Secretary of the United States Department of Health and Human Services, George C. Wallace, as Governor of the State of Alabama, Faye S. Baggiano, as Commissioner of the Alabama Medicaid Agency, and Gwendolyn H. Williams, as Commissioner of the Alabama Department of Pensions and Security;

(2) That it be and it is hereby DECLARED that the policy of the Alabama Medicaid program of automatically including sibling and grandparent income when determining Medicaid eligibility violates 42 U.S.C.A. § 1396a(a)(17)(B) & (D); and

---

**5.** Since the state defendants' arguments in favor of including grandparent income when determining Medicaid eligibility is *not* based on any official interpretation by the Secretary of Health and Human Services, the court is not restricted to rejecting the state defendants' arguments only if they result in an interpretation that exceeds the Secretary's statutory authority or that is arbitrary and capricious.

(3) That defendants George C. Wallace, as Governor of the State of Alabama, Faye S. Baggiano, as Commissioner of the Alabama Medicaid Agency, and Gwendolyn H. Williams, as Commissioner of the Alabama Department of Pensions and Security, be and they are hereby each ENJOINED and RESTRAINED from further enforcement of said policy.

It is further ORDERED:

(1) That the parties be and they are hereby DIRECTED to meet with each other within 21 days from the date of this judgment to attempt to agree upon what additional relief the plaintiff class is entitled; and

(2) That the plaintiffs be and they are here allowed 28 days from the date of this order to file a request for additional relief should the parties be unable to agree upon such relief.

It is further ORDERED that costs be and they are hereby taxed against all defendants, for which execution may issue.

The clerk of the court is DIRECTED to issue a writ of injunction.

DONE, this the 5th day of January, 1987.